The ESTATE OF John SKALKA, Deceased, John Skalka, Joseph Skalka and Laura Ostergren, Appellants–Plaintiffs,

v.

Mark SKALKA, Appellee–Defendant.

No. 46A03–0009–CV–327.

Court of Appeals of Indiana.

July 10, 2001.

Molly E. Palmer, Braje & Nelson, LLP, Michigan City, IN, Gregory Hofer, La-Porte, IN, Attorneys for Appellants.

Douglas L. Biege, Newby, Lewis, Kaminski & Jones, LaPorte, IN, Attorney for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

John "Jay" Skalka, Joseph Skalka, and Laura Ostergren appeal the trial court's order enforcing a settlement agreement made between them and Mark Skalka on November 16, 1999. They raise three issues regarding the trial court's order, namely 1) whether sufficient evidence exists showing Jay, Joseph, and Laura agreed to the settlement, 2) whether the judge improperly acted as a mediator during the settlement negotiations, and 3) whether the trial court's order allowing the parties to file trial briefs without providing copies to all other parties was error. We affirm.

## FACTS AND PROCEDURAL HISTORY

John Skalka passed away on September 7, 1996. John "Jay" Skalka, Joseph Skalka, Laura Ostergren, and Mark Skalka are his surviving children. Prior to his death, John Skalka created a revocable living trust agreement in order to bequeath fifty acres of property, including a lake, to his children. The disposition of that lake property is the subject of this appeal.

Jay, Joseph, and Laura were unable to agree with Mark regarding the use of the property. Therefore, the three of them together filed a petition to partition the property with intent to sell it or buy Mark out should a complete partition not be successful. In a pretrial conference held on November 16, 1999, the parties discussed settlement. During that conference, the trial judge spoke with the parties in chambers for a period of time without their attorneys; then the attorneys joined their clients in chambers to make notes regarding an agreement reached by the parties. That agreement provided that Mark was to have ten of the fifty acres as well as an easement to use the lake; Jay, Joseph, and Laura were to share the remaining forty acres and also have use of the lake. Later that day, the attorney for Jay, Joseph, and Laura submitted to the court and to Mark's attorney a draft of the agreement for signing. The parties never signed the agreement.

In a status conference held on May 10, 2000, the trial judge reiterated his recollection of the agreement reached by the parties in chambers on November 16, 1999. Jay, Joseph, and Laura denied reaching that agreement, but Mark was in accord with the agreement. The trial judge took the matter under advisement, allowing the

parties time to file trial briefs. The judge issued an order on August 25, 2000, putting in writing the agreement he reiterated on the record during the May 10, 2000, status conference. Jay, Joseph, and Laura objected, claiming they never agreed to the settlement during the pretrial conference and claiming that the trial judge's recollection of what occurred during the conference was inaccurate. This appeal followed.

## STANDARD OF REVIEW

This court has previously noted the standard of review when a trial court makes findings and conclusions on its own motion:

Sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. Findings will only be set aside if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.

*Bronnenberg v. Estate of Bronnenberg*, 709 N.E.2d 330, 333 (Ind.Ct.App.1999).

## DISCUSSION AND DECISION

The trial court made the following finding in its order dated August 25, 2000:

9.) That in the course of this litigation, the parties reached an oral settlement agreement at a pretrial conference held on March 16, 1999 [date later corrected to November 16, 1999] in the presence of this Court as to the partition of the real estate and the disputes regarding estate (trust) assets and the payment of estate (trust) expenses and that the agreement was made part of the record of this Court.

(R. at 110.) It is this finding with which Jay, Joseph, and Laura first take issue. They argue that the record is devoid of evidence that they accepted the settlement, and they suggest that the judge exerted pressure on them to accept the settlement when he met with them in chambers without their attorney present. "The acceptance of the trial court's recollection as a basis for enforcing an alleged settlement agreement is tantamount to the judge testifying against the Appellants and then making a finding of fact based on his own testimony." (Br. of Appellants at 11.) They assert they were denied their day in court, as the agreement was entered as a final order without them having an opportunity to have an evidentiary hearing on the matter before the trial court.

The record contains sufficient evidence to support the trial court's finding that an agreement was reached at the pretrial conference. We note initially that the lack of a transcript of the settlement conference does not render the agreement unenforceable. Generally, a settlement agreement is not required to be in writing; *see, e.g., Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind.2000). Here, the trial judge was present during the settlement discussions, and thus he heard the parties agree to the

settlement. In addition, we find it particularly compelling that Jay, Joseph, and Laura's own counsel drafted a written version of the agreement that very afternoon after the conference and provided it to all parties and to the trial court. Thus, we are not persuaded by Jay, Joseph, and Laura's argument that the trial court's inaccurate memory is the only evidence in support of the agreement.[1]

■ Jay, Joseph, and Laura next argue that the judge improperly acted as a mediator during the pretrial conference on November 16, 1999. They note that the ADR rules prevent a judge from acting as a mediator. They also argue the pretrial conference agreement was nothing more than a failed attempt at mediation and thus should be considered under the Alternative Dispute Resolution rules. They point to the following statement by the judge in support of their argument:

> You know, we sat in my chambers, people, and you walked out of my office in agreement. Alright. I did as much as I could possibly do to resolve the conflict. But if you people want to continue fighting, I'm no longer going to be the *mediator* here, I'm going to be a judge. You are going to go through the cost of this thing. It's going to be financially drain-

ing and I can tell you you're going to wind up losing the property.
(R. at 530.) (Emphasis added.)

■ However, we find that this statement merely indicates the trial judge was attempting, in his role as judge, to assist the parties in reaching a settlement of their disputes, not that he was seeking to act as a mediator in a mediation governed by the Alternative Discipline Resolution (ADR) rules. Mark's brief contains an especially apt description of the trial court's actions: the trial judge was simply "entertaining settlement discussion at a pretrial conference." (Br. of Appellee at 19.) Generally, the purpose of a pretrial conference is to narrow the issues for trial; in this case, all the issues were resolved at the pretrial conference. As this was a pretrial conference and not a mediation, the judge did not act improperly.[2]

■ Next, Jay, Joseph, and Laura note that the trial judge met with the parties in chambers for a period of time without their attorneys present; after a settlement was reached, the judge called the attorneys into his chambers to review the agreement along with their clients. They suggest they were subjected to undue pressure from the trial judge to settle during this meeting. While this method of attempting to resolve a dispute is perhaps somewhat unorthodox, we find no impropriety[3] in this action by the court. In-

---

1. They also argue the language of the Order itself shows the parties did not all agree to it. The portion of the Order they cite reads as follows: "This cause is submitted for a ruling on the court's own motion to enforce the proposed settlement agreement." (Br. of Appellants at 10.) We find the language "proposed settlement" does not accurately characterize what occurred at the pretrial conference. Thus, the trial court's choice of wording is somewhat unfortunate, but it nevertheless does not support Jay, Joseph, and Laura's argument that there was no valid agreement.

2. The case before us brings into relief the potential for conflict between a judge's tradi-

tional role as decisionmaker and a court's well-intentioned attempts to encourage and facilitate less-formal resolution of disputes by the parties themselves. A court's readiness to take advantage of the various options offered by the Indiana Alternative Dispute Resolution rules might help to avoid situations like this one where, as a result of a judge's diligent efforts to bring about settlement among the parties, "no good deed goes unpunished." *Eaton v. Onan Corp.*, 117 F.Supp.2d 812, 835 (S.D.Ind.2000).

3. Even if the trial judge's actions were error, Jay, Joseph and Laura invited the error by

deed, Jay, Joseph, and Laura's attorney drew up settlement documents immediately following the conference, an action we imagine he would not have taken had he suspected any undue influence had been exerted on his clients.

■ Finally, Jay, Joseph, and Laura argue that when the trial court entered its order dated June 12, 2000, allowing either party to file trial briefs without the necessity of serving other parties, the trial court was effectively enabling the parties to have improper *ex parte* communications with the judge. (Br. of Appellants at 11.) We disagree. Ind. Trial Rule 5(A)(4) provides that every brief submitted to the trial court shall be served on each party unless otherwise provided by an order of the court. The trial court properly exercised its discretion under this rule in not requiring service on all parties of trial briefs. Thus, Mark's trial brief was not an improper *ex parte* communication.

Affirmed.

BAILEY, J., and FRIEDLANDER, J., concur.

---

their participation in the meeting. A party may not invite error and then rely on such error as a reason for reversal. *Estate of Goodwin v. Goodwin,* 721 N.E.2d 886, 890 n. 5 (Ind.Ct.App.1999). *And see Gary Teachers Union, Local No. 4, Am. Federation of Teachers v. School City of Gary,* 165 Ind.App. 314, 324, 332 N.E.2d 256, 262 (1975) (error arising from grievance meeting was invited by teacher's agent for collective bargaining where agent requested the meeting and the teacher attended with counsel and participated).