**In re The Marriage of Joyce ZAN, Appellant–Respondent,**

v.

**Lawrence ZAN, Appellee–Petitioner.**

No. 32A05–0403–CV–159.

Court of Appeals of Indiana.

Jan. 21, 2005.

Bryan Lee Ciyou, Ciyou & Dixon, P.C., Indianapolis, IN, Attorney for Appellant.

William O. Harrington, William O. Harrington, P.C., Danville, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Joyce Zan appeals the trial court's order granting appellee-petitioner Lawrence Zan's Verified Petition to Modify or Revoke Prior Order of Maintenance. Specifically, Joyce contends

that the trial court erred in modifying the parties' settlement agreement with respect to Lawrence's obligation to make rehabilitative maintenance payments. Finding no error, we affirm.

### FACTS

Lawrence and Joyce were married on May 11, 1985, and Lawrence petitioned to dissolve the marriage on December 18, 2001. On April 9, 2002, the parties filed their negotiated Summary Dissolution Decree (the "Agreement"), which was approved by the trial court. The Agreement includes the following provision:

3. *REHABILITATIVE MAINTENANCE*

Father agrees to pay directly to Mother eight hundred dollars ($800.00) per month in rehabilitative maintenance for a period of three years, so long as Father remains employed in his current capacity with the FAA. If Father's employment should change, this event shall be considered a substantial change in circumstances thereby effectuating a modification of the amount of maintenance payable to Mother.

\* \* \* \*

The parties note that Father is agreeable to paying rehabilitative maintenance due to the fact that Mother has not worked continuously throughout the marriage and needs assistance in obtaining an education to better employment opportunities. Said maintenance is not being paid due to disability.

Appellant's App. p. 49.

Pursuant to the rehabilitative maintenance provision, between April 2002 and February 10, 2004, Lawrence made twenty-three monthly payments to Joyce at the rate of $800 per month. Joyce did not attend school between April 2002 and December 2002 because she was concentrating on a drug rehabilitation program related to her addiction to pain pills. Between December 2002 and April 2003, Joyce attended the Masters Pro program, but she did not complete that educational program. In October 2003, Joyce enrolled at ITT Technical Institute, but subsequently learned that she did not meet the requirements and withdrew. As of February 10, 2004, Joyce was looking into, but had not yet enrolled in, educational and vocational training programs at Goodwill, Hendricks College Network, and Sheltering Wings.

As of February 10, 2004, Lawrence was still employed with the FAA. He testified that he is willing to continue making rehabilitative maintenance payments if Joyce actually enrolls in an educational program.

On February 10, 2004, Lawrence filed the maintenance modification petition in open court and the trial court conducted a hearing on the petition. On the same date, the trial court issued its order granting Lawrence's petition. The order provides, in pertinent part, as follows:

5. The purpose of the maintenance award was to provide Wife *assistance to obtain education to obtain better employment opportunities.*

6. I.C. 31–16–8–1 permits modification of an order for maintenance if (1) there is a change so substantial and continuing that the original terms are unreasonable and (2) if more than twelve months have passed since the prior order.

7. Wife has made no substantial effort to enroll in and complete any formal education.

8. Wife has been employed in various jobs earning from $7.50 to $10.00 per hour.

9. Wife pays no child support and thus does not have that weekly expense.

10. Wife has had the benefit of $18,400.00 to be used towards her education.

11. Wife has been in substance abuse treatment to cope with a long term prescription drug problem.

12. The Dissolution Decree is silent as to the nature and extent of education needed.

13. Wife has been drug free for 18 months, but has not gained better employment than at the time of the decree.

14. Husband shall make the next $800.00 maintenance payment, that being the 24th payment.

15. Husband's obligation to make the payments of $800.00 per month shall terminate.

16. Husband's maintenance obligation shall, until and including April 7, 2005 be to reimburse Wife in an amount up to $9,600.00 for educational classes or training begun prior to April 7, 2005 and successfully completed by Wife.

17. Wife shall provide Husband with an invoice at the beginning of the class or training and with a report showing successful completion of the class or training.

18. Husband shall reimburse wife [sic] within 7 days of receiving the report.

Appellant's App. p. 9 (emphasis in original). Joyce now appeals.

### DISCUSSION AND DECISION

Joyce contends that the trial court erred in modifying the Agreement. Specifically, she argues that the trial court lacked the authority to modify the Agreement because it could not have ordered Lawrence to make spousal maintenance payments without the parties' consent. Lawrence responds that because the trial court would have had the statutory authority to order him to make rehabilitative maintenance payments, it had the authority to modify the Agreement.

■■■ As we consider Joyce's argument, we note that the trial court's order is a general judgment entered with findings: "[s]ua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Estate of Skalka v. Skalka*, 751 N.E.2d 769, 771 (Ind.Ct.App.2001). We further note that to the extent the order relies upon interpretation of the Agreement, we will review that de novo because it is a pure question of law. *Dedelow v. Pucalik*, 801 N.E.2d 178, 183 (Ind.Ct.App.2003).

■■■ There are two ways in which a party to a divorce may be obligated to make spousal maintenance payments. Either the parties may provide for maintenance in a negotiated settlement agreement or the court may order maintenance payments in certain limited circumstances. *Voigt v. Voigt*, 670 N.E.2d 1271, 1275–76 (Ind.1996). A trial court may award only "three, quite limited" varieties of post-dissolution maintenance: spousal incapacity maintenance, caregiver maintenance, and rehabilitative maintenance. *Id.* at 1276; *see also* Ind.Code § 31–15–7–2. A court may order rehabilitative maintenance for no more than three years if it finds that a spouse needs support while acquiring sufficient education or training to get an appropriate job. I.C. § 31–15–7–2(3). Additionally, the parties "may themselves provide for maintenance in settlement agreements where the court could not otherwise order it." *Voigt*, 670 N.E.2d at 1277. Indeed, "the parties to a maintenance agreement

are both grown-ups, free to bargain with their own legal rights." *Id.* at 1274.

Our supreme court has noted that courts should exercise their authority to review settlement agreements with "great restraint." *Id.* at 1279. In *Voigt,* our supreme court established a general principle: "[w]here a court had no authority to impose the kind of maintenance award that the parties forged in a settlement agreement, the court cannot subsequently modify the maintenance obligation without the consent of the parties." *Id.* at 1279–80. The court reserved the question whether a court may modify a maintenance obligation that originated in a settlement agreement but that rested on one of the grounds— including rehabilitative maintenance—on which the court could have ordered the same maintenance in the absence of agreement. *Id.* at 1280 n. 13; *see Stuart v. Phillips,* 734 N.E.2d 1046 (Ind.2000) (confirming that *Voigt* did not resolve whether a trial court may modify a spousal maintenance obligation where it could have ordered the same maintenance initially).

■ The trial court and Lawrence both contend that Indiana Code section 31–16–8–1 [1] vests the trial court with authority to modify the Agreement. Appellant's App. p. 9; Appellee's Br. p. 11. But as noted by our supreme court in *Voigt,* this provision "refers to the modification of only *court-imposed* maintenance, not of approved maintenance agreements." 670 N.E.2d at

1279 (emphasis in original). Thus, the statute does not answer the question of whether the trial court in this case had the authority to modify the negotiated Agreement.

■ Here, Joyce and Lawrence agreed that Lawrence would make rehabilitative maintenance payments to Joyce "due to the fact that [she had] not worked continuously throughout the marriage and needs assistance in obtaining an education to better employment opportunities." Appellant's App. p. 49. The trial court would have had the authority, pursuant to Indiana Code section 31–15–7–2(3), to order Lawrence to make such rehabilitative maintenance payments without the agreement of the parties.

Although our supreme court has not squarely decided the issue presented today, it is our view that the trial court may modify the Agreement under these circumstances. To hold otherwise may circumvent the parties' ability or desire to bargain independently without court intervention. Put another way, a party may be loathe to enter into an agreement such as the one here, knowing that a court could not intervene in the event of changed circumstances.

Even more compelling, when the Agreement is examined as a whole, it is apparent that the purpose of the rehabilitative maintenance provision was to enable Joyce to attend an educational or vocational train-

---

1. Indiana Code section 31–16–8–1 provides as follows:

> Provisions of an order with respect to child support or an order for maintenance ordered under IC 31–16–7–1 (or IC 31–1–11.5–9(c) before its repeal) may be modified or revoked. Except as provided in section 2 of this chapter, modification may be made only:
> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
> (2) upon a showing that:
> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

ing program. Specifically, the Agreement requires Lawrence to make rehabilitative maintenance payments for a full three years "so long as [he] remains employed in his current capacity with the FAA." Appellant's App. p. 49. While Joyce concludes from this clause that the only way, aside from the passage of three years, that Lawrence's obligation may be modified is if he loses his job with the FAA, our review of the Agreement leads us to disagree. A subsequent clause goes on to note that Lawrence "is agreeable to paying rehabilitative maintenance due to the fact that [Joyce] has not worked continuously throughout the marriage and needs assistance in obtaining an education to better employment opportunities." *Id.* It is apparent from this clause that the parties intended that the rehabilitative maintenance would assist Joyce "in obtaining an education" so that she could seek better employment opportunities. The evidence presented at the hearing showed that rather than obtaining an education, Joyce has collected over $18,000 from Lawrence and has instead apparently used it as a means of supporting herself. In our view, such was not the intent and spirit of the Agreement. Thus, under these circumstances, the trial court properly modified Lawrence's maintenance obligation.

The judgment of the trial court is affirmed.

ROBB, J., concurs with opinion.

KIRSCH, J., dissents with opinion.

ROBB, Judge, concurs with separate opinion.

I respectfully concur in Judge Baker's result. Here, Lawrence petitioned the trial court requesting that it modify his maintenance payment to Joyce. The trial court found, and Lawrence now contends, that Indiana Code section 31–16–8–1 gives a trial court the authority to modify maintenance agreements. Indiana Code section 31–16–8–1 really only pertains to a trial court's authority to modify or revoke child support payments. Indiana Code section 31–15–7–3 does give a trial court the authority to modify maintenance agreements, but, as Judge Baker points out, this statute only allows trial courts to modify court-imposed maintenance and not approved maintenance settlement agreements. Because the maintenance at issue here was not court-imposed, neither Indiana Code section 31–15–7–3 or Indiana Code section 31–16–8–1 would have given the trial court the authority to modify the maintenance agreement. In fact, there is no Indiana statute that gives a trial court the authority to modify an approved maintenance settlement agreement.

However, our supreme court has considered the issue of whether a trial court has the authority to modify an approved maintenance settlement agreement. In *Voigt v. Voigt*, 670 N.E.2d 1271, 1280 (Ind.1996), the court held that "a court has no statutory authority to grant a contested petition to modify a maintenance obligation that arises under a previously approved settlement agreement if the court alone could not initially have imposed an identical obligation had the parties never voluntarily agreed to it." But later, in *Stuart v. Phillips*, 734 N.E.2d 1046, 1047 (Ind.2000), our supreme court stated that *Voigt* expressly left open the issue presented here, which is whether a trial court has the authority to modify a spousal maintenance obligation when that court could have imposed the same obligation itself without the parties' agreement. However, the Court's analysis in *Voigt* focused less on whether there was a statutory provision and more on whether the trial court could have awarded it in the first instance. Thus, I believe that Judge Baker's conclusion that a trial court does have the authority to modify a spousal

maintenance obligation that the court could have imposed itself without the parties' agreement is a logical outgrowth of the *Voigt* decision. The trial court here could have awarded Joyce rehabilitative maintenance pursuant to Indiana Code section 31–15–7–2(3) without the parties' agreement. Therefore, I agree with Judge Baker that the trial court could properly modify Lawrence's maintenance obligation.

KIRSCH, Chief Judge, dissenting.

I respectfully dissent.

Negotiated maintenance provisions are only one part of a negotiated property agreement. In exchange for such provisions, a party may give up other property claims or may agree to such a provision solely because of tax consequences of such a provision. Thus, modifying a negotiated maintenance provision implicates the entire division of the marital estate. Moreover, modifying the provision in effect adds a term to the parties' contract for which they did not bargain and for which they neither gave, nor received, consideration. Here, the parties could have made maintenance conditional on wife's satisfactory educational progress. They did not.

Parties are free to negotiate a provision for future modification of such agreements. Indeed, the parties here negotiated and agreed to a provision for modification of the maintenance provision in the event that Husband employment changed. They did not agree to the modification here ordered. I think it is error to modify such a provision in the absence of such an agreement.

In *Voigt v. Voigt*, 670 N.E.2d 1271, 1280 (Ind.1996), our supreme court held that a trial court should not modify a maintenance provision in a negotiated property settlement agreement where it could not have ordered such a provision in the absence of the parties' agreement. I would extend that holding to include all negotiated property settlement agreements.

I would reverse the decision of the trial court.