**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CYNTHIA PHILLIPS SMITH**
Law Office of Cynthia P. Smith
Lafayette, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL J. MOORE**
Laszynski & Moore
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FELIX R. ST. PIERRE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1102-DR-137 |
| | ) | |
| JEANNETTE ST. PIERRE, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-0911-DR-188

**February 29, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Felix R. St. Pierre ("Husband") appeals the trial court's order dissolving his marriage to Jeannette St. Pierre ("Wife") following a final hearing, and Wife cross appeals. Husband and Wife each present two issues for review. We consolidate and restate those issues as follows:

1.  Whether the trial court abused its discretion when it awarded rehabilitative maintenance to Wife.

2.  Whether the trial court abused its discretion when it determined and distributed the marital estate.

We affirm in part, reverse in part, and remand with instructions.

**FACTS AND PROCEDURAL HISTORY**

Husband and Wife married in Maine in 1991. The couple moved into Wife's home, and Husband adopted Wife's minor children. Husband had a mechanical engineering degree and Wife had a high school diploma and some college credits. Husband is six years younger than Wife. When the parties married, both were employed by International Paper, where Husband was an engineer and Wife was a technical writer.

In 1998, the family relocated to Hamilton, Ohio, where Husband had taken a job with Champion International Paper. As a result of the move, Wife quit her job at International Paper in Maine. The parties later moved to Fichburg, Massachusetts, again for Husband's work with a paper company. And in 2005, the parties relocated to Lafayette, Indiana, where Husband had taken a job with another paper company. In February 2008, Husband moved to Bristol, Indiana, to work for White Pigeon Paper, but

2

the parties maintained and Wife stayed in their home in Lafayette. The parties separated on July 1, 2008.[1]

In August 2008, Husband relocated to Canton, North Carolina, to work for Blue Ridge Paper. Husband and Wife purchased a house in North Carolina and remodeled parts of the house. And in November 2009, Husband moved household items and other personal property to the North Carolina house, including some of Wife's belongings. Wife was still living in the marital residence in Lafayette.

On November 12, Husband filed his petition for dissolution, and on May 7, 2010, Wife filed a petition for rehabilitative maintenance. The trial court held a final hearing on June 29 and November 9. On January 21, 2011, the court entered a decree dissolving the parties' marriage, distributing the marital property, and ordering Husband to pay rehabilitative maintenance to Wife ("Decree"). Husband now appeals, and Wife cross-appeals.

## DISCUSSION AND DECISION

### Standard of Review

In Trabucco v. Trabucco, 944 N.E.2d 544, 548-49 (Ind. Ct. App. 2011), trans. denied, we set out the applicable standard of review where, as here, a party requests that the trial court issue findings and conclusions.

> When findings and conclusions thereon are entered by the trial court pursuant to the request of any party to the action, we apply a two-tiered standard of review.

---

[1] The dissolution court found that the parties separated July 1, 2008. Wife does not dispute this date, although she testified that the parties subsequently purchased a house in North Carolina and worked together to remodel and move into it.

3

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

(quoting Balicki v. Balicki, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005), trans. denied) (internal citations omitted).

### Issue One: Rehabilitative Maintenance

A trial court's decision to award maintenance is reviewed under an abuse of discretion standard. Moore v. Moore, 695 N.E.2d 1004, 1007 (Ind. Ct. App. 1998) (citation omitted). This court will presume that the trial court properly considered the applicable statutory factors in reaching its decision. Id. Our task is limited to determining whether there is sufficient evidence to support the trial court's judgment. Id.

The trial court may award maintenance for only "three, quite limited" purposes: spousal incapacity maintenance, caregiver maintenance, and rehabilitative maintenance.[2] Dewbrew v. Dewbrew, 849 N.E.2d 636, 644 (Ind. Ct. App. 2006); see also Ind. Code §§ 31-15-7-1, -2. The requirements for an award of rehabilitative maintenance are described

---

[2] The court may also order one spouse to pay maintenance to the other spouse based on the parties' agreement, see Dewbrew, 849 N.E.2d at 644 (citing Voigt v. Voigt, 670 N.E.2d 1271, 1277 (Ind. 1996)).

4

in the statute that sets out the findings a court may make in support of a maintenance award:

> After considering:
>
>> (A) the educational level of each spouse at the time of marriage and at the time the action is commenced;
>>
>> (B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;
>>
>> (C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and
>>
>> (D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;
>
> a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

Ind. Code § 31-15-7-2(3). A trial court's decision to award maintenance is purely within its discretion and we will only reverse if the award is against the logic and effect of the facts and circumstances of the case. Matzat v. Matzat, 854 N.E.2d 918, 920 (Ind. Ct. App. 2006) (regarding incapacity maintenance) (citing Augspurger v. Hudson, 802 N.E.2d 503, 508 (Ind. Ct. App. 2004)).

Husband contends that the trial court erred when it awarded Wife rehabilitative maintenance. Specifically, he argues that the evidence does not support an award of rehabilitative maintenance and that the trial court should have made the award contingent

on Wife attending school. We address each contention in turn and then consider Wife's contention that the maintenance award is too low.

We first consider Husband's contention that the evidence does not support a finding of the statutory factors necessary to award maintenance. In awarding rehabilitative maintenance, the trial court found:

14. On the first day of the month after entry of this Dissolution Decree in this cause, and on the first day of each month thereafter for the following thirty-five (35) months, the Husband shall pay to the Wife the sum of $1,100.00 as rehabilitative maintenance. The Court determines the Wife is entitled to rehabilitative maintenance for the following reasons:

A. The Husband is an engineer and during the marriage received additional training to become a surveyor. This occurred while the Wife was employed outside of the home. In contrast, the Wife has very little college and, currently, few marketable job skills. The Husband is now earning in excess of $83,000.00 per year.

B. During the marriage the Wife gave up the security of a job wherein she was earning $35,000.00 per year. She also spent time at home with the children and was the primary child care provider and homemaker. Her employment has been interrupted.

C. There is a material disparity in each of the parties' current earning capacities. The Husband not only has a secure job at age fifty-two (52), but he has life-long job security. In contrast, the Wife has limited education, training and employment skills. Her age and health are significant factors.

D. The Wife is currently enrolled in Ivy Tech and has been since August of 2010. She has reasonable prospects toward becoming a registered nurse.

6

Husband's App. at 10.[3]

Husband first challenges some of the findings the trial court made in support of the maintenance award. He asserts that the trial court improperly based the maintenance award on Wife's "physical condition and her mental state. Husband believes that both of these factors are irrelevant to an award of rehabilitative maintenance." Husband's Brief at 13. We agree. Wife's age and health could affect her earning capacity, but those are not criteria listed in the statute to support an award of rehabilitative maintenance. Instead, those criteria would support an award of incapacitative maintenance. <u>See</u> Ind. Code § 31-15-7-2(1).[4] Moreover, the trial court made no findings to show how Wife's age or health pertain to any of the statutory factors to be considered when awarding rehabilitative maintenance. Thus, this finding does not support the trial court's award of rehabilitative maintenance.

Husband next challenges the trial court's finding that he has "life-long job security" as not supported in the record. We agree. Our review of the transcript disclosed no evidence showing that Husband has life-long job security.[5] Indeed, Husband

---

[3] Both parties have filed appendices. For clarity and consistency, we refer to the briefs and appendix as belonging to "Husband" or "Wife" instead of using the procedural designators "Appellant" or "Appellee."

[4] Indiana Code Section 31-15-7-2(1) provides:

If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

[5] We pause to observe that the transcript is fraught with errors, both in spelling and in substance. For example, Wife testified that she had a "bone spur that had gone through [her] kealey so they had to take out part of the okaeleys." Transcript at 109. Given the context of that quote, it is clear that Wife testified about her Achilles tendon. But the parties here were fortunate that the pervasive transcription

has changed jobs multiple times throughout the marriage. The trial court erred in finding Husband enjoys life-long job security.

Husband also contends that Wife is not entitled to rehabilitative maintenance because the evidence does not show an interruption in her education. But Husband misreads the statute, which is written in the disjunctive. Again, Indiana Code Section 31-16-7-2(3) sets out factors that must be considered before awarding maintenance. One of those factors is "whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both[.]" Ind. Code § 31-15-7-2(3)(B) (emphasis added).

There is no question that Wife suffered an interruption in her employment during the marriage. As such, Wife argues that the interruption in her employment was due in relevant part to the parties' frequent relocations for Husband's work. But, under Indiana Code Section 31-16-7-2(3)(B), an interruption in employment may be considered when determining a rehabilitative maintenance award where the interruption was "as a result of homemaking or child care responsibilities[.]" The statute does not refer to interruptions caused by relocation for the other party's job opportunities. The trial court found that Wife was the primary care provider for the children, but it did not specify that the interruption in her employment was due to her child care or homemaking responsibilities. And the record shows that she was intermittently employed throughout the marriage.

---

errors have not prevented our review of the issues on the merits in this case. In another case, the types and number of errors here could have made review impossible.

Thus, we do not consider her interruption in employment as a factor under Section 31-16-7-2(3)(B) as supporting the rehabilitative maintenance award.

Husband also argues that the court erred when it did not make the maintenance award contingent on Wife "obtaining a [d]egree, furthering her education or reentering the workforce." Husband's Brief at 14. In support, Husband cites Zan v. Zan, 820 N.E.2d 1284 (Ind. Ct. App. 2005). There, the husband's agreement to pay rehabilitative maintenance was incorporated into the parties' dissolution decree. After making payments for nearly two years, the husband filed a motion to modify the maintenance award. The wife had attended but not completed multiple and varied courses of study and was not, at the time of the filing, enrolled in any educational program. Instead, the wife had apparently used the husband's payments to support herself.

Following a hearing, the trial court modified the decree by requiring the husband to reimburse the wife for educational expenses but only after she had incurred those expenses. The wife appealed and this court affirmed, holding in part that the trial court had authority to modify the maintenance award because the court could have ordered such an award absent agreement of the parties. Id. at 1288-89.

Without much analysis, Husband contends that Zan supports his contention that the trial court should have conditioned Wife's rehabilitative maintenance award on her obtaining a degree or otherwise furthering her education. The holding in Zan does not compel that conclusion. There, the husband requested a modification because the wife was using the money for living expenses, not for education to obtain marketable skills.

The trial court modified the award to provide that the wife would be reimbursed instead of paid in advance for educational expenses, which we affirmed on appeal.

Here, however, Wife is enrolled and taking courses in a registered nursing program. Husband has not shown that she is not using or would not use the maintenance payments for their intended purpose. Thus, Zan does not support his contention that the maintenance order in this case must, as a matter of law, be contingent on her attending school. Nor has Husband shown that her attendance should be required as a condition of a rehabilitative maintenance award on the facts of this case. Id.; see also Lloyd v. Lloyd, 755 N.E.2d 1165, 1171 (Ind. Ct. App. 2001) (declining to make wife's rehabilitative maintenance award contingent on attending school where findings supported the maintenance award). As such, Husband's argument on this point must fail.

In sum, we have determined that the finding regarding Wife's health was not a basis for awarding rehabilitative maintenance and the finding regarding Husband's life-long job security is not supported by the record. We are then left with the following findings to support the rehabilitative maintenance award: the parties' education levels, the parties' work experience, Husband's current income, Wife's lack of marketable job skills, the disparity in the parties' current earning capacities, and Wife's enrollment in a three-year registered nursing program. These findings reflect three of the four considerations listed in Section 31-16-7-2(3) regarding rehabilitative maintenance, and we conclude that they are sufficient to support an award of rehabilitative maintenance.

Finally, we briefly consider Wife's challenge on cross-appeal to the amount of the rehabilitative maintenance award. Specifically, Wife contends that the amount is too

10

low.  Rehabilitative maintenance is intended to help a spouse "acquir[e] sufficient education or training to get an appropriate job."  Cannon, 758 N.E.2d at 526 (citation omitted).  Indiana Code Section 31-16-7-2(3) provides that a trial court may award maintenance "in any amount . . . that the court considers appropriate."  The parties have not directed us to any law defining what the statute means by an "appropriate" amount, and we found only one published case to help define that term.  In Pham v. Pham, 650 N.E.2d 1212, 1214-15 (Ind. Ct. App. 1995), the husband's adjusted gross income was approximately $10,000 per year, but the trial court had ordered him to pay $9,100 a year in maintenance.  Relying on the child support guidelines by analogy, we held that it would be "inappropriate for a court to award more than fifty percent of the obligor's weekly gross income where there is only a spouse entitled to maintenance."[6]  Id. at 1215.

Again, we must consider the findings and the evidence supporting the findings to determine whether $1100 is an appropriate amount of maintenance in this case.  But here, despite the parties' request for findings, the trial court did not explain its rationale for the amount of Wife's rehabilitative maintenance award.  Without findings to support the amount of the award, we cannot determine whether the ordered amount is supported by the record.  Thus, we must remand for the trial court to make findings to support an appropriate amount for the rehabilitative maintenance award.  See  Heiligenstein v.

---

[6] While the holding in Pham decreased the maintenance obligation substantially, in light of the evidence of the husband's income this court's holding left surprisingly little for husband to maintain himself.  We observe that the opinion in Pham did not detail Wife's expenses, only mentioning a mortgage obligation.  But the situation of the Wife there was extreme.  The husband had previously immigrated to the United States, where he subsequently purchased a home and an alterations business.  The husband had later sponsored the wife and two of their children for immigration to the U.S., and the wife did not speak, read, or write English.  In other words, Pham is an extreme case, and neither this court nor the Indiana Supreme Court has ever affirmed a rehabilitative maintenance award even approaching 50% of a party's weekly gross income.

Matney, 691 N.E.2d 1297, 1304 (Ind. Ct. App. 1998) (remanding for findings to support child support amount ordered where the parties had requested findings and judgment contained no support for amount ordered). Upon remand, the trial court should consider Wife's actual educational expenses and the policies of Indiana Code Section 31-16-7-2(3).

### Issue Two:  Marital Estate

On cross-appeal, Wife contends that the trial court abused its discretion when it identified and distributed the marital estate. In particular, Wife argues that the trial court erred when it set a mobile home outside the marital estate, awarding the same to Husband. She also argues that the trial court abused its discretion when it divided the marital estate equally between the parties. We consider each issue in turn.

We first consider Wife's argument that the trial court erred when it did not include the parties' mobile home in the marital estate. Indiana Code Section 31-15-7-4(a) provides:

> In an action for dissolution of marriage under IC 31-15-2-2, the court shall divide the property of the parties, whether:
>
> (1) owned by either spouse before the marriage;
>
> (2) acquired by either spouse in his or her own right:
>
>> (A) after the marriage; and
>>
>> (B) before final separation of the parties; or
>
> (3) acquired by their joint efforts.

This statute requires all property to be considered in the marital estate. Balicki, 837 N.E.2d at 539 (citation omitted). With certain limited exceptions, the "one-pot" theory of

Indiana family law specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award. Id. at 539-40 (citation omitted). Only property acquired by an individual spouse after the final separation date is excluded from the marital estate. Id. (citation and quotation marks omitted).

Here, the parties purchased the mobile home in the spring of 2007. Although Husband made the purchase in Wife's absence and titled it only in his name, he considered it a "joint asset." Transcript at 47. Again, any asset acquired jointly by the parties is a marital asset. See Ind. Code § 31-15-7-4(a)(3). And all such assets, whether titled jointly or individually, are to be included in the marital pot subject to division in dissolution proceedings. Balicki, 837 N.E.2d at 539-40. The trial court's determination that the mobile home was Husband's separate property, outside the marital estate subject to division, is contrary to the evidence and the law. As such, the trial court erred when it did not include the mobile home in the marital pot.

Wife next contends that the trial court abused its discretion when it divided the marital estate equally between the parties. We discussed the standard of review of the distribution of a marital estate in Hardebeck v. Hardebeck, 917 N.E.2d 694, 699-700 (Ind. Ct. App. 2009):

> In dissolution cases, the court "shall divide the [marital] property in a just and reasonable manner[.]" Ind. Code § 31-15-7-4. Indiana Code Section 31-15-7-5 governs the distribution of marital property and provides as follows:
>
> > The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence of the following factors, that an equal division would not be just and

reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

The division of marital assets is within the dissolution court's discretion, and we will reverse only for an abuse of discretion.

(Alterations original, emphases and citations omitted).

Here, Wife contends that she presented evidence sufficient to rebut the presumption that an equal division of the marital estate is just and reasonable.[7]

---

[7] Wife also argues that the trial court erred by making findings in support of an equal division but then dividing the estate unequally by setting the mobile home outside the marital pot. We have already concluded that the mobile home should have been included in the marital estate subject to division. Thus, we need consider only Wife's argument that the court should have distributed more than half of the

Specifically, she argues that Husband "drastically out[-]earns" her. Wife's Brief at 14. She also points out that her economic circumstances at the time of the dissolution were well below Husband's and well below her circumstances when she and Husband married. She also argues that her age, poor health, and status of being unemployed and without job prospects all weigh in favor of an award of more than half of the marital estate to Wife.

Wife's arguments in support of her contention that the marital estate should have been divided unequally in her favor amount to a request that we reweigh the evidence, which we cannot do. Trabucco, 944 N.E.2d at 549. Moreover, in support of the equal distribution of the marital estate, the trial court also noted that Husband had paid all of the marital obligations while the case was pending and that Husband was willing to pay or had already paid the indebtedness to retailers and medical care providers totaling $3444.[8] Wife had the burden to rebut the presumption that an equal division of the marital estate was just and reasonable. Ind. Code § 31-15-7-5. We cannot say that the trial court abused its discretion when it determined that Wife has not rebutted the statutory presumption in this case.

However, in light of our conclusion that the trial court erred by excluding the mobile home from the marital estate, the trial court's division as ordered in the decree is not equal. The trial court did not determine the value of the mobile home in the Decree. According to the transcript, Husband testified that he had purchased the mobile home for $300 but that the state had assessed it for tax purposes for $8000. Given the extreme

marital estate to her. In that context, we will also consider the unequal division resulting from the erroneous exclusion of the mobile home.

[8] The former marital residence in Lafayette, which the trial court awarded to Wife, was fully paid for at the time of the final hearing.

disparity in these values and the numerous errors elsewhere in the transcript, we decline to determine the value of the mobile home. Therefore, we remand for the trial court to determine the value of the mobile home based on the testimony given at the final hearing and, based on that value, to modify the Decree by adjusting the payment to be made by one party to the other to achieve an equal division of the marital estate.

**Conclusion**

In sum, we reverse some of the findings in support of the maintenance award, either because the evidence in the record does not support them or because they do not support such an award under Indiana Code Section 31-15-7-2(3). However, we conclude that the remaining findings support an award of rehabilitative maintenance. We also conclude that the trial court did not enter findings to support the amount of the award. Thus, we remand with instructions for the trial court to review the evidence from the final hearing and the findings affirmed in this opinion and then to enter findings to support the amount of the maintenance award in accordance with Indiana Code Section 31-15-7-2(3). If the court concludes that it cannot justify the amount of the award, then the court shall reconsider the findings affirmed in this opinion and the financial evidence from the final hearing, determine a maintenance award that is appropriate in light of those findings and that evidence, make specific findings to support the amount of the award, and modify the Decree accordingly.

Regarding the division of the marital estate, we reverse the trial court's finding that the mobile home is not included in the marital estate subject to division, but we affirm the trial court's determination that an equal division of assets is just and

16

reasonable. Therefore, we remand with instructions for the trial court to revise the Decree to include the mobile home in the marital estate, to assess the value of the mobile home, and, if necessary, to modify the Decree to provide payment from one party to achieve an equal division of property. If on remand, however, the trial court modifies the maintenance award, the court may reconsider whether an equal division of the marital estate is just and reasonable and, if necessary, adjust the percentage division of property accordingly.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, J., and VAIDIK, J., concur.