# FOR PUBLICATION



**FILED**
Jun 04 2014, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRADLEY L. BANKS**
Banks & Brower, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**CYNTHIA P. HELFRICH**
Brownsburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL W. PALMBY,                )
                                  )
   Appellant-Petitioner,         )
                                  )
      vs.                     )   No. 32A04-1310-DR-506
                                  )
KAREN M PALMBY,                   )
                                  )
   Appellee-Respondent.          )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephenie LeMay-Luken, Judge
Cause No. 32D05-0801-DR-8

**June 4, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Michael W. Palmby (Michael), appeals the trial court's denial of his Verified Petition for Revocation of Spousal Maintenance.

We affirm.

## ISSUE

Michael raises three issues which we consolidate and restate as: Whether the trial court abused its discretion when it denied Michael's request to revoke spousal maintenance which the parties had agreed upon and the trial court had incorporated in the final divorce decree.

## FACTS AND PROCEDURAL HISTORY

Michael and Appellee-Respondent, Karen M. Palmby (Karen), were married on June 13, 1981 and divorced on May 2, 2008. During the marriage, three children were born, two of whom were emancipated at the time of the divorce. The youngest child was of college age and not emancipated for purposes of college expenses. During the course of their marriage, Michael and Karen ran a family business where they both worked. Karen had worked at a daycare center for a short time, but mainly stayed home with the children.

The Agreement of Property Settlement entered into by Michael and Karen at the time of the divorce contained a provision for spousal maintenance in favor of Karen, which read

**9. Spousal Maintenance**

a. Purpose and Intent of this Article: It is the mutual desire of the parties to provide a continuing measure of income for Wife, receiving party, after the dissolution of the parties' marriage. The payments made by Husband, paying party, are intended to qualify as contractual alimony as that term is defined in section 71(a) of the Internal Revenue Code of 1986 (the "Code"), as amended, and are intended to be includable in the gross income of the receiving party under section 71(a) of the Code and deductible by paying party under section 215(a) of the Code. All provisions of this article will be interpreted in a manner consistent with that intention.

b. Terms, Conditions and Contingencies:
   1. Payments. Husband shall make and pay regular monthly alimony payments in the amount of one thousand five hundred dollars for twenty-four (24) months.

   2. Term. The payments shall be for a period of twenty-four months commencing per paragraph 9(b)(3) with the last payment being on the 24th month.

   3. [] Husband agrees to make spousal maintenance payments in the amount of One Thousand Five Hundred Dollars ($1,500.00) per month for a period of 2 years, or twenty-four (24) months, for a sum of Thirty Six Thousand Dollars ($36,000.00).

* * *

e. The payments shall be considered spousal maintenance as Wife has been out of the workforce for a period of time and needs additional time to rehabilitate herself, finding additional training to reenter the workforce.

(Appellant's App. pp. 15-16).

At the time of the entry of the agreement, May 2, 2008, Michael was working as a realtor, earning approximately $120,000 per year. Over time, Michael's income diminished to the point where Michael could no longer afford to rent his apartment and, in 2009, he moved in with his girlfriend. In 2012, Michael's yearly earnings had shrunk to $1,200 and in 2013, Michael terminated his real estate license. After resigning as a

realtor, Michael began working as a call center employee for RCI in Indianapolis, receiving an hourly wage of $9.45. He made an approximate amount of $50,000 in 2013.

During the pendency of the divorce, Karen became employed at Kohl's Department Store. Shortly thereafter, she broke her arm, causing her to leave her employment for a while. Karen resumed her position in January 2009 and has since received a promotion, earning $15.36 per hour.

Since the parties divorced in 2008, Michael has failed to make the maintenance payments anticipated by the parties' settlement agreement. On October 29, 2009, in response to Michael not making full payments, Karen filed a Verified Petition for Contempt. On December 16, 2009, the trial court approved the parties' agreed entry showing that Michael had paid $7,000.00 in maintenance payments and continued to owe a total of $29,500.00 in payments. As a result, the trial court ordered Michael's pay garnished at an amount of 10% until paid in full. After this agreed entry, Michael made another $5,333.64 in payments to Karen, with his last payment in September of 2012.

On August 5, 2013, Karen filed another Verified Petition for Contempt. That same day, Michael filed a Verified Petition for Revocation of Spousal Maintenance, requesting the trial court to revoke the spousal maintenance provisions of the settlement agreement because of a substantial and continuing change in his circumstances. On September 17, 2013, the trial court conducted a hearing on the parties' Petitions. That same day, the trial court issued its Order, finding Michael in contempt and denying his Petition for Revocation of Spousal Maintenance but modifying the payment schedule. The trial court concluded, in pertinent part, that

4

3. Husband owes $24,299.36 in spousal maintenance to Wife.

4. Husband had a significant reduction in income while employed as a real estate agent.

5. On December 17, 2009, the Parties entered into an Agreed Entry that addressed the spousal maintenance issue wherein Husband's wages would be garnished at a lesser amount than $1,500.00 per month. Husband changed employment twice without providing his work information to Wife so she could have the garnishment order amended.

6. Husband testified that 2008 and 2009 were difficult financial years due to the real estate market. However, Husband entered into the property settlement agreement in the middle of 2008.

7. Wife relied on receiving these monthly funds from Husband.

8. Husband cannot reasonably afford to pay $1,500.00 per month.

9. Husband had the funds to make payments towards spousal maintenance in 2013 but failed to do so.

10. The parties entered into the property settlement agreement while represented by counsel.

11. If Wife knew Husband was not going to pay over $24,000.00 of spousal maintenance, it is reasonable and logical to believe other parts of the agreement would have been altered.

12. The Court finds that Husband is in contempt for failing to make a continued good faith effort to make spousal maintenance payments.

13. The Court denied Husband's Petition to Revoke Spousal Maintenance.

14. The Court modified the payment schedule. Husband is [o]rdered to pay $200.00 per paycheck towards spousal maintenance. Husband's attorney shall prepare an Income Withholding Order for the Court's approval.

(Appellant's App. pp. 9-10).

Michael now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Michael contends that the trial court abused its discretion in denying his Petition to Revoke Spousal Maintenance. Specifically, he asserts that the substantial and continuing change in his employment and financial circumstances warrants the revocation of the maintenance award. As we consider Michael's argument, we note that the trial court's order is a general judgment entered with findings. *Sua sponte* findings control only as to

5

the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Zan v. Zan*, 820 N.E.2d 1284, 1287 (Ind. Ct. App. 2005). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence.

There are two ways in which a party to a divorce may be obligated to make spousal maintenance payments. Either the parties may provide for maintenance in a negotiated settlement agreement or the court may order maintenance payments in certain limited circumstances. *Voigt v. Voigt*, 670 N.E.2d 1271, 1275-76 (Ind. 1996). A trial court may award only "three, quite limited" varieties of post-dissolution maintenance: spousal incapacity maintenance, caregiver maintenance, and rehabilitative maintenance. *Id*. at 1276. A court may order rehabilitative maintenance for no more than three years if it finds that a spouse needs support while acquiring sufficient education or training to get an appropriate job. *See* I.C. § 31-15-7-2(3). Additionally, the parties "may themselves provide for maintenance in settlement agreements where the court could not otherwise order it." *Voigt*, 670 N.E.2d at 1277. Where the parties have contractually agreed to spousal maintenance, our supreme court has made it clear that courts should exercise authority to review settlement agreements with "great restraint," so as not to interfere with contractual freedom. *Id*. Indeed, the *Voigt* court determined that "[w]here a court had no authority to impose the kind of maintenance award that the parties forged in a settlement agreement, the court cannot subsequently modify the maintenance obligation without the consent of the parties." *Id*. at 1279-80. Subsequently, in *Zan*, this court concluded, as a logical outgrowth of *Voigt*, that where a settlement agreement rested on a

6

ground on which the trial court could have ordered the maintenance in the absence of an agreement, a trial court may modify the agreement. *Zan*, 820 N.E.2d at 1288. Thus, the propriety of the trial court's order modifying the maintenance in the instant case depends entirely upon the designation of the original award of maintenance it purports to modify—and to which the parties acquiesced in the settlement agreement.

Casting the spousal maintenance as rehabilitative maintenance, Michael contends that because Karen re-entered the workforce instead of seeking vocational training, the maintenance is not used as intended and should be revoked. Rehabilitative maintenance may not be awarded for more than three years from the date of the final decree and is intended to help a spouse "acquir[e] sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment." I.C. §31-15-7-2(3). Paraphrasing the language of the statute, the settlement agreement provided Karen with spousal maintenance for a period of twenty-four months, to "rehabilitate herself, finding additional training to reenter the workforce." (Appellant's App. p. 16). From the evidence presented during the modification hearing, we readily glean that even though Karen conceded that the spousal maintenance payments were intended to allow her to "obtain additional training or education," she allocated Michael's infrequent payments towards the payment of medical bills. She admitted that "had maintenance been regularly paid as was contemplated in the [p]roperty [s]ettlement [a]greement," she would have "sought other employment, other training to gain employment." (Transcript p. 16).

Therefore, because the settlement agreement rested on a ground on which the trial court could have ordered the maintenance in the absence of an agreement, the trial court

7

had the authority to modify the instant agreement with respect to rehabilitative maintenance.

It is worth noting that the parties agreed to spousal maintenance for a period of twenty-four months, *i.e.*, June 1, 2008 to May 1, 2010. In December 2009, approximately nineteen months into the twenty-four month period, Michael entered into an agreed entry, acknowledging he was in contempt for failure to make the payments as directed and the trial court modified the payment terms by garnishing his pay at an amount of 10% until paid in full. In other words, at the time the spousal maintenance terms were in effect, Michael did not request a modification based on a substantial and continuing change in circumstances, nor did he submit evidence reflecting this change during the relevant period.

Currently, although the spousal maintenance terms are no longer in effect, Michael's failure to pay regularly has resulted in an accrued deficit of $24,299.36. Because the period during which the rehabilitative maintenance had to be paid has ended, the terms of the maintenance can no longer be modified; rather, only the payment terms of the accrued amount are modifiable. In the instant disputed modification, the trial court, finding that Michael had the funds to make payments towards the accrued spousal maintenance amount in 2013 but failed to do so, modified the payment terms, ordering him to pay $200.00 per paycheck towards the accumulated maintenance.

Mindful of the "great restraint" which we should exercise in reviewing settlement agreements, we cannot say that the trial court abused its discretion in denying Michael's

request to revoke the spousal maintenance and instead modified the payment terms of the accumulated rehabilitative maintenance. *See Voigt*, 670 N.E.2d at 1277.

CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by denying Michael's Petition to Revoke Spousal Maintenance.

Affirmed.

ROBB, J. and BRADFORD, J. concur