**Peggy J. HAVILLE, Appellant (Respondent below),**

v.

**Michael HAVILLE, Appellee (Petitioner below).**

No. 79S02–0310–CV–482.

Supreme Court of Indiana.

April 13, 2005.

Cynthia L. Garwood, Lafayette, IN, Attorney for Appellant.

Jason W. Bennett, James A. Gothard, Bennett, Boehning & Clary, Lafayette, IN, Attorneys for Appellee.

DICKSON, Justice.

Peggy Haville ("former wife") appeals from the trial court's dismissal of her petition for modification of the dissolution decree approving the parties' settlement agreement under which Michael Haville ("former husband") was to pay maintenance of $400.00 per month for the remainder of the wife's life. The Court of Appeals affirmed in a published decision. *Haville v. Haville*, 787 N.E.2d 410 (Ind.Ct. App.2003). We granted transfer, 804 N.E.2d 755 (Ind.2003)(table), and now hold that maintenance may be ordered that continues beyond the death of the obligor, but that the trial court lacked the authority to modify the parties' specific agreement here providing for fixed spousal maintenance not subject to modification.

The parties' marriage was dissolved on December 16, 1997. The parties agree that the wife suffers from Multiple Sclerosis and that, by the time their dissolution was finalized, she was confined to a wheelchair. As part of their settlement agreement, which was approved and incorporated in the dissolution decree, the parties agreed as follows:

## SPOUSAL MAINTENANCE

1. Wife is permanently disabled, however, Wife receives substantial sums from Purdue University and the Social Security Administration. Those amounts are being taken into account in determining the amount of spousal maintenance that is being paid to Wife.

2. Husband shall pay directly to Wife maintenance in the amount of $400.00 per month *for the remainder of her life.*

Appellant's App'x. at 11 (emphasis added). The final section of the agreement included the following among its fifteen numbered paragraphs:

## MISCELLANEOUS

1. In consideration of all promises contained in his agreement, the parties shall *release all claims and rights which either* ever had, now has or *might hereafter have* against the other by reason of their former relationship as Husband and Wife, or otherwise, excepting all of the claims and rights of each party created and outstanding against the other pursuant to the terms of this agreement. It is the intent hereof that each party hereby accepts the provisions of this agreement *in full release and settlement* of any and all claims and right [sic] against the other. It is the further agreement of the parties that the provisions of this agreement shall inure to the benefit of, and be *binding upon, the heirs, executors, administrators, and personal representatives* of the parties hereto unless otherwise provided herein.

...

3. This is an agreement to settle all property *and spousal maintenance rights* between Husband and Wife in the event a dissolution shall be entered by the Court....

*Id.* at 13, 14 (emphasis added).

In March of 2002, the former wife petitioned the trial court to increase the amount of her monthly maintenance award. Granting the former husband's motion to dismiss the petition, the trial court noted that the maintenance provision was payable beyond the husband's death and thus found that it was not modifiable "because it was based upon an agreement of the parties and exceeded the powers of the Court in the absence of the parties' agreement." *Id.* at 45 (citing *Voigt v. Voigt,* 670 N.E.2d 1271 (Ind.1996)).

In *Voigt,* this Court held that "a court has no statutory authority to grant a contested petition to modify a maintenance obligation that arises under a previously approved settlement agreement if the court *alone* could not initially have imposed an identical obligation had the parties never voluntarily agreed to it." *Id.* at 1280 (emphasis added). We expressly reserved, however, "the question whether a court may modify a maintenance obligation that originated in a settlement agreement but that rested on a ground—incapacity, caregiving, or rehabilitation—on which the court could have ordered the same maintenance in the absence of agreement." *Id.* at 1280 n. 13.

█ Asserting that the present case falls within the issue reserved in *Voigt,* the former wife contends that the trial court *did* have the authority to make the maintenance award agreed to by the parties. She acknowledges Indiana decisions holding that a maintenance obligation terminates with the death of the obligor, but asserts that this applies only where an agreement or decree is silent, thus implying that a trial court *may* impose a maintenance obligation that continues after the death of the obligor. The former husband argues that maintenance payments may not be continued after the death of the payor.

In *Hicks v. Fielman,* 421 N.E.2d 716 (Ind.Ct.App.1981), the parties' agreement required the husband to pay a gross sum "alimony judgment" in fixed monthly installments, but which were to cease upon the wife's death or remarriage. Observing that this constituted a judgment of "periodic alimony: maintenance," *id.* at 722, the court stated: "Unless an agreement or decree calling for maintenance clearly says otherwise, maintenance payments can not accrue after the death of the person liable for them." *Id.* at 720. It later explains: "[T]he obligation to pay periodic alimony ceases with the death of the person liable for it. This seems to be the general rule when the decree allowing alimony does not provide that payments shall continue after the death of the payor." *Id.* at 722. *Hicks* was cited in *Brown v. Guardianship of Brown,* 775 N.E.2d 1164 (Ind.Ct.App. 2002), for the proposition that a "claim for maintenance after the death of her former husband could not as a matter of law succeed because the decree awarding such maintenance did not provide that the payments would continue after the death of the payor." *Id.* at 1166. Like *Hicks,* the obligation to pay spousal support in *Brown* did not include any requirement that such payments survive the obligor's death. The court in *Brown* thus concluded, "an obligation to pay periodic spousal support, such as in this case, ceases with the death of the person liable for it." *Id.* at 1167.

Indiana case law thus does not prohibit a maintenance obligation from surviving the death of the obligor where the decree

so provides. Furthermore, maintenance for a spouse's incapacity, lasting beyond the death of the obligor, is authorized by statute. Where a spouse is incapacitated such that the spouse's ability of self-support is materially affected, a court "may find that maintenance for the spouse is necessary *during the period of incapacity,* subject to further order of the court." Ind.Code § 31–15–7–2(1) (emphasis added). The duration of this authorized maintenance obligation is expressly measured by the period of the recipient's incapacity and not by the lifetime of the obligor.[1]

■ Here, the parties' settlement agreement explicitly directs the husband to pay monthly maintenance to the wife "for the remainder of her life." Appellant's App'x at 11. In addition, the agreement provisions are "binding upon the heirs, executors, administrators, and personal representatives of the parties." *Id.* at 13. It is undisputed that this maintenance obligation rested on the wife's incapacity. Thus, if the parties' settlement agreement provided only that maintenance be paid to the wife for the remainder of her life, the court could have ordered the same maintenance in the absence of agreement and such facts would present the question reserved in *Voigt.*[2]

The maintenance agreement in this case, however, goes beyond merely requiring payment for the lifetime of the former wife: it also prohibits future modification claims. The agreement provides that the agreement settles all "spousal maintenance rights" and releases "all claims and rights which either ever had, now has or might hereafter have against the other by reason of their former relationship as Husband and Wife." Because Indiana Code § 31–15–7–3 provides that spousal maintenance authorized by statute may be modified, the trial court lacked the authority to order maintenance payments that were *not* subject to modification. Thus lacking the power on its own to order non-modifiable spousal maintenance, the trial court lacked authority to thereafter modify the maintenance obligation created by the previously approved settlement agreement. *Voigt,* 670 N.E.2d at 1280.

Transfer having previously been granted, we affirm the trial court order dismissing the petition for modification of maintenance.

SULLIVAN and BOEHM, JJ., concur.
SHEPARD, C.J., concurs in result with separate opinion in which RUCKER, J., joins.

SHEPARD, C.J., concurring in result. ·

I think the majority correctly affirms the trial court's decision that the order for maintenance entered by the court in this case at the request of the parties is not subject to revision except by their mutual consent. On the other hand, I think the grounds on which this holding rests wrongly decide an important subsidiary question: does Indiana law authorize or-

---

1. The death of an obligor is not a structural impediment to such an obligation. With respect to child support, for example, provisions for child support are not terminated by the death of the obligated parent. Ind.Code § 31–16–6–7(a)(2).

2. While not addressed and answered in *Voigt,* the question is clearly resolved by statute. As noted above, the statutory authorization for incapacity maintenance provides that such an order is "subject to further order of the court." Ind.Code § 31–15–7–2(1). Moreover, Indiana Code § 31–15–7–3 expressly declares that provisions of an order for maintenance authorized by statute "may be modified or revoked" upon specified grounds, one of which is "a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."

ders for maintenance that continue even after the obligor dies?

As it is with many uniform acts, Indiana was an early adopter of the Uniform Dissolution of Marriage Act.

This reform abandoned a good number of long-standing legal concepts. It eliminated the need to assign blame for the failure of a marriage, such that people frequently call it "no-fault divorce." The act also put an end to the last vestige of the antique idea that the husband was the sole economic and legal unit, with the wife a mere appendage of little separate identity. Instead, it treated husband and wife as equal economic participants; it contemplated that they would divide their assets and go their separate ways after the "dissolution," as though they were terminating a corporation or a partnership. Consistent with this policy, the act abolished the very idea of alimony. *Johnson v. Johnson*, 174 Ind.App. 408, 410, 367 N.E.2d 1147, 1149 (1977).

Our legislature was fairly muscular on this last point. The uniform act featured a provision for maintenance when a spouse "lacks sufficient property to provide for his reasonable needs [and] is unable to support himself through appropriate employment." *Unif. Marriage and Divorce Act* § 308 (amended 1973), 9A U.L.A. 446 (1998). The Indiana Civil Code Study Commission tendered the act to our legislature with a similar provision.[3] The General Assembly elected instead what the Court of Appeals later called a "more restrictive" provision authorizing maintenance when a spouse is "physically or mentally incapacitated." Pub.L. No. 297 § 9(c), 1973 Ind. Acts 1585, 1590.

Even during the days of alimony, the rule was that periodic alimony payments made to support a former spouse (as opposed to alimony provided in lieu of a share of property) terminated upon the death of the obligee. *See, e.g.,* 1949 Ind. Acts ch. 120, s. 3, p. 313; *White v. White*, 167 Ind.App. 459, 338 N.E.2d 749 (1975). And from the earliest cases under the 1973 act to the most recent ones, the Court of Appeals has said unless the divorce decree clearly says otherwise, the maintenance ends when the obligor dies. *See, e.g., Brown v. Guardianship of Brown*, 775 N.E.2d 1164, 1167 (Ind.Ct.App.2002); *Hicks v. Fielman*, 421 N.E.2d 716, 722 (Ind.Ct.App.1981); *White v. White*, 167 Ind.App. 459, 471, 338 N.E.2d 749, 756 (1975).

If anything, the 1973 act retained the distinction between periodic post-divorce payments intended as division of property and those payments intended as ongoing support of an ex-spouse. It abolished the latter (except in cases of incapacity). It also abolished the former, except when the parties submit for court approval an agreement in writing to "provisions for the maintenance of either of them" under section 10 of the 1973 act. The Court of Appeals once called this "putting a new hinge on an old door," a provision designed to let parties decide to take advantage of the federal income tax treatment of such payments. *Hicks*, 421 N.E.2d at 721.

In the face of these long-standing principles about termination of alimony and maintenance, and without overruling any of the multiple cases of this Court or the Court of Appeals on the point, the majority today holds that the Code gives Indiana

---

**3.** The court may grant maintenance "only if it finds (1) that the spouse seeking maintenance lacks sufficient income and property to provide for his reasonable financial needs and (2) that the spouse seeking support is unable to support himself through employment ..." Report of the Civil Code Study Commission, Proposed Dissolution of Marriage Act § 210 (1970).

judges power to order maintenance beyond the death of the obligor whether the parties agree to it or not. It does so on the basis of a single phrase: a court "may find that maintenance for the spouse is necessary *during the period of incapacity.*" Ind.Code Ann. § 31–15–7–2(1) (West 1999) (emphasis added). It is hard to imagine that the General Assembly would choose to alter such a fundamental legal concept, one that has spanned several generations at least, with such subtlety. The majority cites nothing else but the five underlined words as support for its conclusion—not a report about national trends or any scholarly articles or even any judicial speculation to support its view that the legislature intended a substantial policy change by using these words. I think it much more likely that the General Assembly simply intended to recognize that certain impairments may last for quite a while but not last forever, like treatable illness for which there would be an extended period of recovery hopefully followed by good health.

Because I conclude that the legislature did not intend to authorize judges to order maintenance beyond the death of the obligor, I think the majority gets to the right result. The parties' agreement "for the maintenance of either of them," lasting even after the husband's death, submitted by them under section 10 and incorporated into the decree, can only be modified by their mutual assent. This rule reflects adherence to provisions in section 10(c), and it also represents good judicial policy. If it were the case that courts could modify such agreements after the decree is entered, how could the judge know with confidence what got traded for what during the course of the earlier negotiations? If one party is to be granted more of something, should that party be obliged to give up part of something else obtained in the course of achieving a settlement? Even if judges *could* redesign settlements after

the fact, a legal system that sanctioned such redesigning would be one in which parties settled far less often than they do now.

RUCKER, J., joins.