## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2017, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rebecca J. Maas
Smith Fisher Maas Howard & Lloyd, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kevin P. Podlaski
Joshua A. Burkhardt
Beers Mallers Backs & Salin, LLP
Fort Wayne, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Shambaugh & Son, LP,

*Appellant-Defendant/Counterclaimant,*

v.

Allen County Public Library,

*Appellee-Plaintiff/Counterdefendant*

August 9, 2017

Court of Appeals Case No.
02A03-1701-PL-73

Appeal from the Allen Superior Court

The Honorable Craig J. Bobay, Special Judge

Trial Court Cause No.
02D01-1002-PL-26

**Vaidik, Chief Judge.**

# Case Summary

[1] Shambaugh & Son, L.P. (Shambaugh) appeals the trial court's judgment in favor of the Allen County Public Library (Library) on Shambaugh's breach-of-contract claim. Finding no error, we affirm.

# Facts and Procedural History

[2] This is the second appeal in this case. In our first opinion, we explained that, in 2004, the Library undertook a capital-improvement project to renovate and add to its main library branch building in Fort Wayne. *Allen Cty. Pub. Library v. Shambaugh & Son, L.P.*, 997 N.E.2d 48, 49 (Ind. Ct. App. 2013), *aff'd on reh'g*, 2 N.E.3d 132 (Ind. Ct. App. 2014), *overruled on other grounds by Bd. of Comm'rs of Cty. of Jefferson v. Teton Corp.*, 30 N.E.3d 711 (Ind. 2015). We noted that the Library hired W.A. Sheets & Sons, Inc. as the construction manager and MSKTD & Associates, Inc. as the architect and that it contracted directly with Shambaugh to perform mechanical, electrical, and fire-protection work and with Hamilton Hunter Builders, Inc. to do concrete work. *Id*.

[3] The Library agreed to pay Shambaugh approximately $12.4 million for its work on the project. The Library's contract with Shambaugh, which consisted of a main agreement and multiple attachments, required it to "set aside ten percent (10%) of the funds as retainage and hold the retainage in escrow until the work

was fully performed." Appellant's App. Vol. II pp. 22-23.[1]  Article 6 of the main agreement, captioned "FINAL PAYMENT," provides that

> [f]inal payment . . . shall be made by the Owner to the Contractor when (1) the Contract has been fully performed by the Contractor . . .; and (2) a final Project Certificate for Payment has been issued by the Construction Manager and Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the final Project Certificate for Payment[.]

Appellant's App. Vol. VI p. 19.  And Paragraph 7.2 of the main agreement states, "Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located." *Id*. at 20.  No rate was specified in the contract, and Shambaugh tells us that it should be 8%, in accordance with Indiana Code section 24-4.6-1-102.

In July 2007, Shambaugh submitted an "Application for Payment" indicating that it had completed 100% of its work on the project and requesting the release of the remaining retainage: $691,267.20.  In December 2008, the Library released $300,000 of the retainage to Shambaugh.  Then, in early 2010, with the remaining $391,267.20 still unpaid, the Library filed a lawsuit against

---

[1] Shambaugh's appendix consists of eight volumes, but the table of contents is written as though the documents are organized in four volumes.  This, of course, threw off the pagination, rendering the table of contents, and some of the citations in Shambaugh's briefs, largely unhelpful.  We urge counsel to exercise greater care in the future.

Shambaugh and the other companies involved in the project. In our first opinion, we described the basis for the suit as follows:

> One part of the library renovation and addition project required Shambaugh to permanently install an emergency diesel generator and two diesel fuel storage tanks—one 1,000 gallon tank and one fifty gallon "day" tank—in the library's basement. Hamilton Hunter poured the concrete floor supporting the generator and tanks, and which also covered copper piping connecting the "day" tank and generator. Part of the concrete pouring process required Hamilton Hunter workers to create a wooden form for the concrete and drive steel stakes into the ground. In December 2007, the Library discovered that a hole in the copper piping had caused approximately 3,000 gallons of diesel fuel to leak into the ground underneath the library. The Library believes that the hole was caused by a Hamilton Hunter employee having driven a steel stake through the pipe. The Library undertook to investigate and clean up the leaked fuel.

*Allen Cty. Pub. Library*, 997 N.E.2d at 51 (footnote omitted). Shambaugh filed a counterclaim against the Library, seeking release of the remainder of the escrowed retainage and the escrow income, as well as an award of 8% interest under the contract.

In February 2016, after six years of litigation that included the first trip to this Court, the trial court entered summary judgment in favor of the defendants on the Library's fuel-cleanup claims, citing subrogation waivers in the relevant contract documents. Shambaugh then filed a motion seeking the payment of the remainder of the escrowed retainage, approximately $99,000 for the income earned on the retainage, and nearly $213,000 for interest pursuant to the parties'

contract, dating back to 2007. In its response, the Library "agree[d] that the retainage and interest [i.e., the income] earned on the retainage should be paid to Shambaugh," noted that it had "been working with the Architect to obtain a certification for the release of these funds," and stated that it would "release the remaining retainage upon receipt of a properly authenticated payment application in conformance with the Contract." Appellant's App. Vol. VI pp. 5-6. However, the Library argued that because it had not yet received the certificate from the architect, the final payment to Shambaugh had not yet come due under the terms of the contract, and that therefore the Library should not be required to pay additional interest.

[7] On October 14, 2016, two days after the Library filed its response, the architect signed a Certificate for Payment stating that to the best of its "knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor [Shambaugh] is entitled to payment of [$391,267.20]." Appellant's App. Vol. VIII p. 17. The Library's attorney sent the certificate to the Library with instructions to "notify the Escrow Agent to release the funds." *Id*. at 15. On November 2, shortly before the hearing on Shambaugh's motion, the escrow agent issued a check for $490,272.35 (representing the retainage of $391,267.20 and escrow income of $99,005.15) to Shambaugh. As such, the only issue that remained was whether the Library owed Shambaugh additional interest under the contract. The trial court agreed with the Library that the final payment to

Shambaugh did not come due until the architect signed the certificate a few weeks earlier, and so it denied Shambaugh's claim for interest.

[8] Shambaugh now appeals.

# Discussion and Decision

[9] Shambaugh contends that the final payment was late, that it is therefore entitled to interest under its contract with the Library, and that the trial court's decision to the contrary is based on a misinterpretation of the contract. Interpretation of a contract is a question of law that we review de novo. *Pohl v. Pohl*, 15 N.E.3d 1006, 1009 (Ind. 2014).

[10] We are troubled by Shambaugh's approach to this appeal. Even though the trial court very clearly based its decision on Article 6 of the main agreement between the parties, Shambaugh makes no mention, in either its opening brief or its reply brief, of that provision or its plain language. Again, Article 6 of the main agreement provides, in part, that

> [f]inal payment . . . shall be made by the Owner to the Contractor when (1) the Contract has been fully performed by the Contractor . . .; and (2) a final Project Certificate for Payment has been issued by the Construction Manager and Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the final Project Certificate for Payment[.]

Appellant's App. Vol. VI p. 19. This language obviously hurts Shambaugh's cause, but Shambaugh has a duty to address relevant contract language, helpful

or not. It is undisputed that no Certificate of Payment was issued before October 14, 2016, and it is undisputed that final payment was issued to Shambaugh less than thirty days later (on November 2, 2016). As such, final payment was never past due under this provision.

[11] Even though Shambaugh never directly addresses Article 6, it does generally allude to it at certain points in its briefs. In its opening brief, Shambaugh suggests that the Library's payment of $300,000 in December 2008 without having received a Certificate for Payment "establishes a waiver of the architect approval" by the Library. Appellant's Br. p. 20. Then, in its reply brief, Shambaugh asserts that allowing the Library to rely on the lack of such a certificate is improper because the Library "has ultimate authority and control over the retainage, including when the Architect would sign/approve the Final Application, and when the funds would be released" and that "[o]btaining the Certification from the Architect was obviously under the control of [the Library]." Appellant's Reply Br. pp. 5-6. Shambaugh does not cite anything in the record that supports either of these arguments, such as evidence of the circumstances surrounding the 2008 payment or of the architect's reason(s) for executing the Certificate for Payment in October 2016. Therefore, Shambaugh's arguments are waived. *See* Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to the authorities, statutes,

and the Appendix or parts of the Record on Appeal relied on[.]"); *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 795 (Ind. 2013).[2]

[12] The trial court did not err by ruling that Shambaugh is not entitled to interest under the contract.

[13] Affirmed.

Crone, J., and Altice, J., concur.

---

[2] Shambaugh's claim for interest relies primarily on a provision in one of the attachments to the main agreement—the "Supplementary Conditions"—that provides: "Final payment, constituting the unpaid balance of the contract sum, shall be paid to the Contractor in full, including retainage of escrowed principal and escrowed income by the escrow agent, no less than 60 days following the date of Substantial Completion." Appellant's App. Vol. IV p. 54 (§ 9.10.3). Shambaugh argues that under this language it was entitled to final payment "within sixty (60) days" of submitting its July 2007 "Application for Payment." Appellant's Br. p. 8. But that is not what the provision says; it says that final payment must be paid "no less than 60 days" after substantial completion—a phrase that does not establish a deadline for payment. It may be that the parties intended for this provision to say "no **more** than 60 days," but even if that were the language, we would still conclude that the final payment was timely under Article 6 of the main agreement, given the date of the Certificate for Payment from the architect.