

FILED

Mar 06 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEY FOR APPELLEE

Lauren M. Longstreet
Longstreet Law, LLC
South Bend, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Michael A. Ferrill,

*Appellant-Respondent,*

v.

Susan E. Ferrill,

*Appellee-Petitioner*

March 6, 2020

Court of Appeals Case No.
18A-DR-2013

Appeal from the St. Joseph Circuit
Court

The Honorable John Broden,
Judge

The Honorable William L. Wilson,
Magistrate

Trial Court Cause No.
71C01-0301-DR-12

**May, Judge.**

[1] Michael A. Ferrill appeals the trial court's order granting Susan E. Ferrill's petition for a rule to show cause in the parties' dissolution of marriage action. Michael argues the trial court erroneously interpreted language in the parties' court-approved settlement agreement and, therefore, abused its discretion when

it found him in contempt for ceasing the monthly payments at issue.  We reverse.

# Facts and Procedural History[1]

Susan and Michael were married in March 1972.  Michael was on active duty in the United States Army until 1995, when he elected to leave active duty prior to accumulating the twenty years of service required for military pension.  In exchange for leaving active duty before qualifying for pension, Michael was to receive Voluntary Separation Incentive ("VSI") payments in an amount based on his pay grade when separating from the military and for "twice the number of years of service."  10 U.S.C.A. § 1175(a)(2)(A).

In January 2003, Susan and Michael separated and filed a petition to dissolve their marriage.  On February 9, 2004, the trial court entered a decree dissolving their marriage and incorporating their property settlement agreement ("the Agreement"), which divided the marital estate.  As to personal property, pensions, and retirement accounts, the Agreement provided:

> 2. The personal property and household furnishings have been amicably divided between the parties, with Wife to keep as her sole and separate property, all of the property presently in her possession, including a 2000 Jeep, Wife's IRA, Wife's Nantucket

---

[1] We held oral argument on this matter on April 2, 2019, at the Indiana Court of Appeals Courtroom.  We thank counsel for their able presentations.

Cottage Hospital pension, three cemetery plots and the items of personal property as set out on Schedule 1 attached hereto.

Husband will keep as his sole and separate property all of the property presently in his possession, including but not limited to a 1994 Aerostar vehicle, Husband's IRA, Husband's military retirement pension, three cemetery plots and certain items in Wife's possession as set out on Schedule 1 attached hereto.

(App. Vol. 2 at 89 (hereinafter, "the Pension Provision").)  As to the VSI payments Michael was receiving, the Agreement provided:

[Michael] currently receives a voluntary separation incentive from the United States Government.  [Michael] will pay to [Susan] the sum of $11,000 annually from this VSI account within ten (10) days from the date that he receives same.  Should this VSI account be converted to any other form of payment, [Michael] will pay this $11,000 obligation from this source pro-rated as received.

(*Id*. at 91 (hereinafter, "the VSI Provision").)

[4]     After the dissolution decree was entered, Michael made $1,000 monthly payments to Susan pursuant to the VSI Provision.  When Michael returned to active duty and received active duty pay in lieu of VSI payments, he continued paying $1,000 per month to Susan.  In 2011, Michael learned he was no longer eligible to receive VSI payments because he had accumulated the twenty years of active-duty service required to receive full military pension.  Around that same time, Michael also learned he would have to repay all VSI monies he had

received, which totaled $386,730.11. Nevertheless, Michael continued to make the $1,000 monthly payments to Susan.

[5] On February 28, 2016, Michael wrote to Susan and informed her that he had received no VSI payments for five years but had continued making monthly payments to her as a courtesy. He told her that those payments would cease after March 2016. On March 14, 2017, Susan filed a petition for rule to show cause asking the court to hold Michael in contempt for stopping his monthly payments. The trial court held an evidentiary hearing on the petition on June 11, 2018. On July 20, 2018, the trial court issued an order granting Susan's petition.

[6] In relevant part, the trial court found as follows:

> 3. Michael's voluntary separation (while holding an officer's rank) from the Army took place in 1995. Although neither of the parties described the program under which Michael left the [A]rmy as a "reduction in force," it essentially was just that. To encourage service members to leave rather than wait until members were vested in their military pensions, the Army agreed to pay departing members an incentive. Michael's annual incentive payments were $22,000.

> 4. The tragic events of September 11, 2001 led to military action in Afghanistan. Michael's training and experience made him a candidate for involuntary recall and deployment to Afghanistan.

5. While Michael was back on active duty, the VSI payments stopped. When Michael again separated from the Army, the VSI payments continued.

6. Michael was recalled to active duty involuntarily on four separate occasions. During the course of those deployments (some of which occurred before and some after the parties were divorced), Michael became eligible for the military pension.

7. Michael's final separation from the Army occurred in 2011. At that time Michael learned that he would no longer be eligible to receive the VSI payments but instead would receive pension payments. Michael was not given a choice between the VSI payments and the pension payments.

8. Federal law requires that when a military veteran receiving VSI payments becomes vested in a pension after additional service, the veteran must repay the VSI payments previously received. This is done through a deduction in the pension payments.

9. Upon hearing of this requirement during the evidentiary hearing, the Court was surprised that the military would impose such a requirement. One would think that in the context of an involuntary recall that leads to a service member being eligible for the pension that the member would simply begin to receive pension payments instead of VSI payments, perhaps in some reduced amount to reflect the moneys received earlier. The Court's research, however, has revealed that this repayment (or recoupment) requirement indeed exists and that Michael is subject to this requirement. This requirement includes the repayment of the *entire* amount of the VSI moneys paid to

> Michael by the military . . . . This requirement is
> mindboggling, but the Court is unable to relieve either of
> the parties of the requirement.

(*Id*. at 14-16 (emphasis original).)

[7] The trial court then applied the law to the facts of the case:

> For a court to conclude that a party is in contempt for failing to
> comply with an order of the court, the party seeking the contempt
> finding must prove three things by clear and convincing
> evidence. First, that the non-compliant party was aware of the
> order. Second, that the order clearly required the non-compliant
> party to act or not act. Third, that the non-compliant party
> willfully failed to comply with the order.
>
> In this case, there is no question that Michael was aware of the
> order contained within the settlement agreement that was
> incorporated into the dissolution decree. Michael complied with
> the requirement that he pay $11,000 from his VSI for a number of
> years. Thus, the first requirement for a finding of contempt is
> satisfied.
>
> Turning to the second requirement, the answer is not reached
> quickly. From Michael's perspective, he knew he was required
> to pay the $11,000 each year from his VSI payment. Once the
> VSI payment stopped, there was no clear requirement that he
> continue making the $11,000 payments. On the other hand,
> from Susan's perspective, the settlement agreement's provision
> regarding conversion of the VSI payments to a different form of
> payment should not require further clarification.
>
> In this case, the Court finds that the parties intended that Susan
> would receive $11,000 each year out of Michael's post-Army
> career pay, whether in the form of the VSI or a future pension

benefit that might replace the VSI. The inclusion of the sentence regarding the "conver[sion] to any other form of payment" makes this clear. Michael's interpretation of Paragraph 5 would render that sentence meaningless. . . .

. . . Even though the parties can offer different interpretations, the Court finds that Michael's interpretation is not a reasonable one given the inclusion of the reference to converting the VSI to another form of payment. Thus, the Court concludes that the settlement agreement was sufficiently clear to inform Michael what was expected of him. The second requirement for a finding of civil contempt is therefore satisfied.

The third requirement is that Susan must prove by clear and convincing evidence that Michael's non-compliance with the settlement agreement was willful. This does not mean that the Court must conclude that Michael was belligerent or refusing to comply. The Court only has to conclude that Michael's actions were intentional as opposed to accidental or that he could not possibly comply. The Court concludes that Susan has carried her burden, and that Michael's cessation of the payments owed to Susan was willful.

Because all three requirements for a finding of civil contempt have been satisfied, the Court can reach only one conclusion: Michael is in contempt for his failure to make the $11,000 yearly payments to Susan.

The next question concerns the remedy. The Court concludes that the only genuine remedy is for Michael to resume making the payments to Susan, effective immediately, as Michael's pension payments are received. In other words, if Michael receives a monthly pension payment, he owes Susan $916.67 each month. . . .

The Court finds that Susan's monthly payment of $916.67 should be reduced by her proportionate share as her contribution to the recoupment. A sample illustration may be helpful. Susan's Exhibit 3 states that as of January of 2017, Michael's recoupment withholding is $2,183. The Court assumes that is a monthly amount. If Michael receives $6,549 per month from his pension, then the $2,183 figure represents one-third of his monthly pension benefit. Susan's payment of $916.67 would therefore be reduced by one third, or $305.56. To the extent Michael has not made any monthly payment to Susan in recent years, the Court considers those missed payments as Susan's "pre-contribution" to the recoupment amounts, and it is possible that these missed payments might affect Susan's proportionate share going forward. The Court will ask the parties to conduct the necessary calculations to establish the payments going forward that Michael will pay to Susan and submit an agreed order accordingly.

(*Id*. at 16-19 (internal citation omitted).)

# Discussion and Decision

[8] Appellate review of family law matters is conducted with a preference for granting latitude and deference to trial courts. *Kicken v. Kicken*, 798 N.E.2d 529, 532 (Ind. Ct. App. 2003). We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Keown v. Keown*, 883 N.E.2d 865, 868 (Ind. Ct. App. 2008). We apply a similar standard of review to a trial court's order finding a party in contempt and, in conducting our review, will consider only the evidence and reasonable inferences supporting the trial court's judgment. *Bandini v. Bandini*, 935 N.E.2d

253, 264 (Ind. Ct. App. 2010). The court's decision finding Michael in contempt was based on the court's interpretation of the parties' Agreement.

[9] A divorce settlement agreement is a contract that we interpret like any other, meaning we will apply a *de novo* standard of review to the trial court's interpretation. *Pohl v. Pohl*, 15 N.E.3d 1006, 1009 (Ind. 2014). Unless the terms of the agreement are ambiguous, they will be given their plain and ordinary meaning, but if there is an ambiguity, we may consider extrinsic evidence to resolve it, with the aim of carrying out the parties' likely intent. *Id.* A contract should be interpreted to "harmonize its provisions, rather than place them in conflict[,]" and we should "make all attempts to construe the language of a contract so as to not render any words, phrases, or terms ineffective or meaningless." *Jernas v. Gumz*, 53 N.E.3d 434, 444 (Ind. Ct. App. 2016), *trans. denied*.

[10] At issue in this case is an alleged conflict between two provisions of the Agreement – the Pension Provision, and the VSI Provision. The Pension Provision gives Michael his "military retirement pension" as "his sole and separate property[.]" (App. Vol. 2 at 89.) The VSI Provision requires Michael to pay Susan $11,000 per year from his VSI payments and states: "Should this VSI account be converted to any other form of payment, [Michael] will pay this $11,000 obligation from this source pro-rated as received." (*Id*. at 91.) Susan alleged, and the trial court agreed, that Michael's VSI payments "converted to" military retirement pension, such that Susan was entitled to $11,000 a year from Michael's military retirement pension, which essentially invalidated the

Pension Provision's pronouncement that Michael's pension was his "sole and separate property." (*Id*. at 89.)

[11] We begin by noting that courts in other jurisdictions have held – when a divorce settlement agreement or a divorce decree has given a percentage of Spouse B's military retirement to Spouse A – that if Spouse B thereafter unilaterally forfeits military retirement by accepting VSI payments, Spouse A is entitled to receive the expected monies from Spouse B's VSI payments in lieu of receiving those monies from retirement benefits that no longer exist.[2] *See, e.g.*, *Kelson v. Kelson*, 675 So.2d 1370, 1372 (Fla. 1996), *reh'g denied*; *Fisher v. Fisher*, 319 S.C. 500, 505-506 (S.C. Ct. App. 1995), *reh'g denied*; *Marriage of Babuta*, 78 Cal. Rptr. 2d 281, 283 (Cal. Ct. App. 1998); *Marriage of Menard*, 42 P.3d 359, 364 (Or. Ct. App. 2002). Susan, in essence, wants us to hold that the inverse is also true – that her entitlement to a portion of Michael's VSI payments under the Agreement converted into an entitlement to a portion of Michael's military pension when Michael became eligible for the pension instead of VSI. However, unlike those cases from other jurisdictions, the Agreement between

---

[2] Courts have ruled similarly when the military spouse opted to leave the military for Special Separation Benefit ("SSB"), which is a one-time lump-sum payment "offered as an incentive for military member's [sic] in certain career fields to leave active duty." "What is SSB?", https://www.dfas.mil/retiredmilitary/plan/separation-payments/special-separation-benefit.html [https://perma.cc/NP7Y-AG8C]. *See, e.g.*, *Heupel v. Heupel*, 936 P.2d 561, 572-73 (Colo. 1997) (when military spouse takes SSB after other spouse given share of retirement, military spouse must pay portion of SSB to replace retirement); *Marsh v. Wallace*, 924 S.W.2d 423, 427 (Tex. Ct. App. 1996) (same); *Kulscar v. Kulscar*, 896 P.2d 1206, 1209 (Okla. Civ. App. 1995) (same); *In re Marriage Crawford*, 884 P.2d 210, 213 (Ariz. Ct. App. 1994) (same), *rev. denied*.

Michael and Susan contained distinct provisions that disposed separately of VSI payments and military pension, and we thus decline to follow those cases.

[12] The trial court noted that our mission when interpreting the Agreement is "to make all attempts to construe the language of a contract so as to not render any words, phrases, or terms ineffective or meaningless." (App. Vol. 2 at 17.) Nevertheless, the court then determined that the "reasonable" reading of the parties' Agreement was a reading that rendered the Pension Provision meaningless. (*Id.* ("the Court finds that Michael's interpretation is not a reasonable one").) The court interpreted the VSI Provision's reference to VSI payments "be[ing] converted to any other form of payment," (*id.* at 91), to include pension payments, even though the Pension Provision gave Michael his pension as "his sole and separate property." (*Id.* at 89.) We disagree with the trial court's interpretation.

[13] First, it seems logical to us that the "converted to any other form of payment" language in the VSI Provision, (*id.* at 91), refers to the times when Michael's monthly paychecks would have come from active duty compensation, rather than VSI. As the trial court found: "While Michael was back on active duty, the VSI payments stopped. When Michael again separated from the Army, the VSI payments continued." (*Id.* at 15.) Furthermore, in light of the fact that Michael had been deployed at least once between his voluntary separation from the military in 1995 and the parties' petition for divorce in 2003, (*see id.*), Susan would have known to ask for the payments from Michael to continue during such times as he might be deployed and receive active duty pay. Finally, it is

illogical to have written the Agreement to give Michael his pension as his separate property if a conversion could occur that would entitle Susan to part of his pension. If Susan had intended to claim part of Michael's pension if it came into existence, then the Agreement should not have given Michael the pension as his "sole and separate property[.]" (*Id.* at 89.) By reading the parties' Agreement in this manner, we can harmonize and give effect to both the Pension Provision and the VSI Provision. *See Jernas*, 53 N.E.3d at 444 (court's goal is to harmonize provisions and not render any portions ineffective or meaningless).

[14] We acknowledge there are cases in which equity supports holding a pension converted to VSI when a veteran unilaterally elected to take VSI, thereby vitiating pension after a divorce settlement agreement provided the spouse with a guaranteed percentage of that pension. *See infra* ¶ 11 & fn.1. Here, however, Michael placed himself in harm's way to serve his country – whether voluntarily or involuntarily matters not to us[3] – and as a result he became entitled to full military retirement. Because the parties' Agreement stated Michael's military retirement pension is "his sole and separate property," the

---

[3] Susan asserts Michael should have "liability" for causing the VSI payments to stop because, contrary to his testimony, he was not involuntarily recalled to active duty. (Appellee's Br. at 9.) In support of her allegation "that Michael . . . must have voluntarily returned to service," (*id.*), Susan notes that "[p]ursuant to 10 U.S. Code § 1175a(j)(2)" soldiers who are involuntarily recalled to active duty are not subject to the repayment requirements of "10 U.S. Code § 1175a(j)(1)." (*Id.*) Susan has correctly represented Section 1175a of the U.S. Code; however, Michael's VSI eligibility arose under Section 1175, not Section 1175a, and Section 1175 contains no such provision distinguishing those who were recalled involuntarily from those who volunteered for recall. Nor would we feel comfortable assigning additional "liability" to a person who had voluntarily chosen to risk his life to serve our country.

trial court erred in ordering Michael to pay any of those pension monies to Susan.[4]

[15]     As a final matter, we must address the trial court's determination that Michael was in contempt for discontinuing the payments to Susan.

> "[T]o be held in contempt for failing to comply with a court order, a party must have willfully disobeyed the order." "The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated." "A party may not be held in contempt for failing to comply with an ambiguous or indefinite order . . . otherwise, a party could be held in contempt for obeying an ambiguous order in good faith."

*Bandini*, 935 N.E.2d at 264-65 (internal citations omitted). Contrary to the trial court's determination, the lack of clarity in the provisions of the parties' Agreement about what Michael should do or not do in this particular circumstance created an ambiguity that prohibited the court from holding Michael in contempt for discontinuing the payments to Susan. *See, e.g., Kulscar v. Kulscar*, 896 P.2d 1206, 1209 (Ok. Civ. App. 1995) ("Given the dearth of law interpreting these relatively new statutory provisions, it was not unreasonable for Appellant to conclude the decree did not cover the SSB payment. Accordingly, any order finding Appellant in indirect contempt cannot stand.").

---

[4] As Susan is not entitled to Michael's retirement pension, but was entitled to the VSI payments, we hold Susan has no obligation to contribute toward the recoupment of the VSI payments that accrued when Michael became eligible for military pension.

As the trial court abused its discretion by finding Michael in contempt, we reverse its determination.

# Conclusion

The trial court erred by interpreting the Agreement's Pension Provision and VSI Provision to conflict. Rather, like other contracts, the Agreement should be read to give effect and meaning to all portions of the Agreement, such that pursuant to the Pension Provision, Michael's military retirement pay is his sole and separate property, and the trial court abused its discretion by holding Michael in contempt for failing to continue the payments to Susan. Accordingly, we reverse.

Reversed.

Baker, J. and Tavitas, J., concur.